IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ANITA MCLEMORE, | ) |
| | ) |
|         Petitioner, | ) |
| | ) |
| vs. | )   CIVIL NO. 13-163-CJP[1] |
| | ) |
| JAMES N. CROSS, | ) |
| | ) |
|         Respondent. | ) |

# MEMORANDUM AND ORDER

**PROUD, Magistrate Judge:**

Petitioner Anita McLemore, an inmate in the Federal Bureau of Prisons ("BOP"), filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 challenging the BOP's pre-release placement determination and calculation of good time credit. For the reasons set forth below, the Petition is denied.

## BACKGROUND

McLemore was sentenced on November 23, 2011 in the Southern District of Mississippi to three years imprisonment after pleading guilty to one count of making false and fraudulent claims in connection with her application for temporary assistance for needy families and food stamps (Doc. 10-1, pp. 10–11).

The BOP calculated that McLemore was projected to earn 141 days of good conduct time over the course of her sentence (Doc. 10-1, p. 8). Based on that

---

[1] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c) (Doc. 23).

calculation, McLemore's projected release date is August 13, 2014 (Doc. 10-1, p. 8).

At her program review on December 21, 2012, the BOP reviewed McLemore's eligibility for pre-release placement in a residential re-entry center or in home detention (*See* Doc. 10-1, p. 3). The BOP determined that four months of pre-release custody was sufficient to assist her with re-entry into society (Doc. 10-1, p. 3).

Unhappy with the determinations regarding her good conduct time and her pre-release placement, McLemore filed this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 on February 19, 2013 (Doc. 1). She filed an amended petition on April 1, 2013 (Doc. 6).

## **DISCUSSION**

The writ of habeas corpus may be granted where the defendant is in custody in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. § 2241(c)(3). In her amended petition, McLemore claims that the BOP's determinations regarding her pre-release placement and her good conduct time violate 18 U.S.C. §§ 3624(b) and (c), as well as the federal regulations pertaining to that statutes. Specifically, she contends that the BOP has improperly decided to run her RRC placement concurrent with, rather than consecutive to, her home detention placement. She also contends that the BOP did not properly consider her for up to 12 months of RRC placement. According to McLemore, she is to be placed in home detention for four months prior to her release, in addition to twelve

months in an RRC; in other words, McLemore believes she is entitled to 16 total months in pre-release custody. Finally, she claims that she is entitled to more good conduct credit than the BOP calculated.

In response, Respondent argues that McLemore's habeas petition should be denied because she did not exhaust her administrative remedies prior to filing her habeas petition, and that McLemore's claims are meritless. Respondent is correct on both points.

### A. McLemore Failed to Exhaust Her Administrative Remedies

There is no statutory exhaustion requirement that applies to § 2241 petitions. *Gonzalez v. O'Connell,* 355 F.3d 1010, 1016 (7th Cir. 2004) (citing *James v. Walsh,* 308 F.3d 162, 167 (2d Cir. 2002)). The Seventh Circuit, however, has recognized that a common law exhaustion requirement applies. *Richmond v. Scibana,* 387 F.3d 602, 604 (7th Cir. 2004). The exhaustion requirement accomplishes two important policy objectives: protection of the agency's authority, and promotion of judicial economy. *Woodford v. Ngo*, 548 U.S. 81, 89 (2006).

In order for federal inmates to exhaust their administrative remedies, they must comply with the Administrative Remedy Program promulgated by the BOP, which "allow[s] an inmate to seek formal review of an issue relating to any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). The process includes a request for informal resolution, formal request for remedy to the Warden (BP-9), appeal to

the BOP Regional Director (BP-10), and appeal to the General Counsel in the BOP Central Office (BP-11). 28 C .F.R. §§ 542.13, 542.14, and 542.15. A federal inmate must complete all steps of the administrative remedy process prior to filing a habeas petition under § 2241, unless certain extenuating circumstances warrant an exception to the common law rule.[2]

Here, McLemore did not initiate, let alone exhaust, the administrative remedy process prior to filing her habeas petition. She argues that she should be excused from exhausting her administrative remedies because she was under "time constraints," and any attempt to exhaust her administrative remedies would "only further delay [her] RRC placement" (Doc. 6, p. 2). She further states that her "extensive efforts to communicate with the staff has [sic] proven futile, evident by their firm position on the matter" (Doc. 6, p. 2).

The Court finds McLemore's failure to exhaust her administrative remedies with regard to the issues at hand is not excusable. McLemore's argument that exhaustion is futile is based on her assumption that her administrative requests and appeals would have been denied at all levels. The Court cannot accept this assumption. There is nothing in the record to indicate that the BOP's position is so firmly solidified that it would automatically dismiss her complaints if brought

---

[2] Under common law, administrative exhaustion may be excused if: (1) requiring exhaustion of administrative remedies causes prejudice, due to unreasonable delay or an "indefinite timeframe for administrative action"; (2) the agency lacks the ability or competence to resolve the issue or grant the relief requested; (3) appealing through the administrative process would be futile because the agency is biased or has predetermined the issue; or (4) where substantial constitutional questions are raised. *Iddir v. I.N.S.*, 301 F.3d 492, 498 (7th Cir. 2002) (citing *McCarthy v. Madigan*, 503 U.S. 140, 146-48 (1992)).

through the appropriate administrative channels. It may well be that the BOP would have agreed with her position and reconsidered her pre-release placement. The fact is that McLemore has no idea what would have happened with her requests for an administrative remedy had she made the effort to begin the process.

Additionally, McLemore's argument regarding time constraints is based on her belief that she should have been released to an RRC in April 2013—sixteen months before her projected release date—because she was entitled to four months on home confinement in addition to twelve months in an RRC (Doc. 6, p. 7). McLemore is incorrect; she is eligible for, but *not* entitled to, a maximum of 12 months in pre-release custody. The Second Chance Act permits the BOP to consider placing inmates nearing the end of their sentences in pre-release community confinement. *See* 18 U.S.C. § 3624(c). Community confinement may include placement in a community correctional facility, such as an RRC, or in home detention. 18 U.S.C. § 3624(c)(1), (2); 28 C.F.R. § 570.20. The statute provides that placement in pre-release custody is "not to exceed 12 months." 18 U.S.C. § 3624(c)(1). Placement in home detention, however, can be for only 10 percent of the inmate's term of imprisonment or 6 months, whichever is shorter. 18 U.S.C. § 3624(c)(2), (2); 28 C.F.R. § 570.21. "The 6 months of home confinement is not additional to the 12 months of prerelease custody." *Guess v. Werlinger*, 421 Fed.Appx. 215, 217 (3d Cir. 2011) (unpublished). Rather, the language of the Second Chance Act puts a cumulative limit of 12 months for all authorized types of pre-release custody. *See* 18 U.S.C. § 3624(c)(1), (2); (Doc. 10-1, p. 2).

Based on McLemore's projected release date of August 2014, the absolute earliest she was eligible for pre-release custody was August 2013, not April 2013 as she suggested. Accordingly, there is no merit to McLemore's suggestion that she did not have time to exhaust, or even initiate, the administrative remedy process. She could have begun the process as early as December 21, 2012, when she was recommended for four months of RRC/home detention placement. At that time, she had approximately 20 months until her projected release date, and eight months until she was potentially eligible for pre-release placement. The process would have undoubtedly been completed before either date. The same appears to be true even if McLemore had waited to begin the process until January 2013, after she purportedly became aware of the Second Chance Act. Regardless, McLemore has not pointed to any authority that holds exhaustion is excused simply because an inmate anticipates the duration of the administrative process will cause them to miss any fraction of the potential twelve-months in pre-release custody.

The BOP should have been given a full and fair opportunity to resolve McLemore's complaint at the institutional level, s*ee Woodford*, 548 U.S. at 89, because the determination of whether pre-release custody is appropriate for an inmate, and the optimal length of that placement, are questions that are peculiarly within the expertise of the BOP. *See* 18 U.S.C. § 3624(c). The facts here demonstrate an unwillingness by McLemore to seek an administrative remedy. She made the decision to file this petition instead of initiating, let alone completing, the administrative remedy process according to the BOP's rules. Due to her failure

to exhaust her administrative remedies, McLemore's petition for a writ of habeas corpus must be dismissed.

**B. McLemore is Not Entitled to Habeas Relief on the Merits of Her Claims**

Even if McLemore was excused from exhausting her administrative remedies, her petition would be denied because her claims have no merit.

**1. Pre-release custody**

McLemore's first and second claims pertain to the BOP's determination regarding her placement in pre-release custody. According to McLemore, the BOP determined that she should be placed on home confinement for four months, but the BOP has failed to consider the number of months she should be placed in an RRC. McLemore suggests that she is entitled to four months of home confinement *plus* 12 months in an RRC, for a total of 16 months in pre-release custody.

McLemore's claims must fail because, as previously indicated, they proceed from a misunderstanding of the Second Chance Act, 18 U.S.C. § 3624(c). The statute plainly authorizes a maximum of twelve months pre-release custody, either to an RRC, or to a combination of RRC and home confinement. 18 U.S.C. § 3624(c). While 12 months of pre-release custody is permissible, the BOP determined that four months was appropriate for McLemore, particularly given the short length of her sentence and her access to community resources (Doc. 10-1, p.13). The BOP's pre-release placement determination for McLemore was consistent with the five factors listed in 18 U.S.C. § 3621, made on an individual

basis, and of sufficient duration to provide the greatest likelihood of successful reintegration into the community. Therefore, the BOP did all that the Second Chance Act requires. *See* 18 U.S.C. § 3624(c)(6); 28 C.F.R. § 570.22.

### 2. Good Time Credit

McLemore's third claim is that the BOP miscalculated the good conduct time she is entitled to receive against her federal sentence resulting in an erroneous projected release date. She was sentenced to three years imprisonment, and she argues that she is therefore entitled to 54 days of good conduct time per year, resulting in a total of 162 days. The BOP, however, determined that she would receive 141 days of good conduct time over the course of her sentence.

McLemore's calculation is based on the total amount of time to which she was sentenced: 3 years x 54 days per year = 162 days of good conduct time. In contrast, the BOP's calculation is based on the amount of time McLemore will actually serve. McLemore received 54 days of good conduct time after she served the first year of her sentence, and 54 more days after she served the second year. Those 108 days of good conduct time were subtracted from the third year of her sentence, and as a result, she will not serve a full third year of imprisonment. Accordingly, she is only entitled to a prorated number of days of good conduct time for her third year—33 days according to the BOP's estimation—resulting in a total of 141 days of good conduct time.

Unfortunately for McLemore, the Supreme Court has already rejected her

precise argument and upheld the BOP's method of calculating good conduct time based on the time a prisoner actually serves.  *Barber v. Thomas*, 560 U.S. 474, 130 S.Ct. 2499, 2505 (2010).

In sum, none of McLemore's three claims have any merit and her habeas petition must be denied on the merits.

## CONCLUSION

Anita McLemore's petition for habeas relief under 28 U.S.C. § 2241 (Doc. 1) is **DENIED** and this cause of action is **DISMISSED with prejudice**.  The Clerk of Court is **DIRECTED** to enter judgment accordingly.

**IT IS SO ORDERED.**

DATED:   January 30, 2014

s/ **Clifford J. Proud**  
CLIFFORD J. PROUD  
United States Magistrate Judge